# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
   **PLAINTIFF,**

**vs.**                **CASE NO.** 19-40044-01-DDC

**JACOB GRAGG,**
   **DEFENDANT.**

## INDICTMENT

**THE GRAND JURY CHARGES:**

AT ALL MATERIAL TIMES:

### INTRODUCTION

**1.** The Gun Control Act of 1968 ("GCA"), and as later amended, included in the definition of a firearm, "… any weapon…which will or is designed to or may readily be converted to expel a projectile by the action of an explosive…[and]…the frame or receiver of any such weapon."

**2.** The National Firearms Act ("NFA") of 1934, and as later amended, was and is a comprehensive taxing system that regulates the manufacture, sale, and transfer of certain covered weapons, including machineguns.

**3.** The NFA incorporates into the definition of a "machinegun" the frame or receiver of any such weapon and any part solely, exclusively, or in conjunction with other parts, that is designed and intended to convert a weapon into a machinegun.

1

**4.** The term "machinegun" described, among other things, a weapon that fired repeatedly with a single pull of the trigger, also described as a fully automatic rate of fire or fully automatic firearm. Conversely, a "semi-automatic" firearm described a firearm that will fire only one round of ammunition each time the trigger is depressed.

**5.** Pursuant to the NFA, a manufacturer, importer, or dealer of covered weapons, including machineguns, must obtain designation as a special occupational taxpayer ("SOT"). SOT designation allows the person to engage in transfers of weapons covered by the NFA.

**6.** Machineguns covered by the NFA must be registered with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in the National Firearms Registration and Transfer Record.

**7.** To transfer possession of a NFA covered weapon for private ownership, the transfer must, among other things, be conducted by an SOT, be recorded on the National Firearms Registration and Transfer Record, and a $200 transfer tax payment must be made to the ATF.

**8.** The Firearms Owners' Protection Act of 1986 ("FOPA"), and as amended, imposed additional restrictions on the private possession of machineguns. Pursuant to FOPA, with the exception of a limited category of machineguns lawfully possessed prior to May 19, 1986, private ownership and possession of machineguns was banned.

## GLOCK INC.

**9.** Glock Inc., was and is an Austrian based corporation that manufactures arms and related products for private and professional use. Glock Inc., maintains a U.S. headquarters in Smyrna, GA that oversees distribution of Glock Inc., products in the United States

**10.** Glock Inc.'s, product line has and does include various semi-automatic pistol models. Each pistol model has two essential components – the frame and the slide. The frame is a polymer-composite material that houses, *inter alia*, the trigger, magazine, and slide release and allows the operator to grip the pistol. The slide houses, *inter alia*, the barrel, recoil spring, and firing pin assembly. To assess the firing pin assembly, Glock pistols have a removable slide plate cover located at the rear of the slide. The slide plate cover is easily removed with limited skill or tools.

## "GLOCK SWITCH"

**11.** Machineguns and semi-automatic firearms share similarities in construction and operation. When gunpowder is ignited, it turns into a rapidly expanding gas. This gas propels the bullet or projectile through the barrel. In machineguns and semi-automatic firearms, the inertia from the gunpowder changing from a solid to a gas state and/or redirection of the gas itself through a piston or impingement system causes the firearm to cycle. A firearm cycles when an expended round is mechanically ejected from the firearm and a new unfired round is mechanically extracted from the source of ammunition, such as a magazine, and placed into position to fire again.

**12.** Glock pistols available to United States retail consumers were and are designed to function semi-automatically. That is, the user must depress the trigger each time the user intends to discharge a round of ammunition and cause the firearm to cycle.

**13.** On January 6, 1998, the United States Patent Office issued Patent Number 5,705,763. The patent was issued for a "Fire Selector System for Selecting Between Automatic and Semi-Automatic Operation of a Gun," (hereafter "the patented device"). The patented device was and is described as an easily installed device capable of converting a semi-automatic firearm into an automatic firearm.

**14.** The patented device constitutes a machinegun pursuant to the NFA and was and is compatible with Glock Inc., firearms. Copies of the patented device were and are colloquially described as "Glock switches."

**15.** The cycle of a Glock 19 pistol is controlled, in part, through the use of a trigger bar. The trigger bar is mounted below the firing mechanism. During normal operation of a factory produced Glock Model 19, the trigger bar engages the firing mechanism and prevents forward motion of the firing mechanism following trigger activation. That is, the trigger bar, along with other internal components, limits the pistol to fire only one round of ammunition each time the trigger is depressed.

**16.** A "Glock switch" is similar in construction to patented invention 5,705,763. That is, a "Glock switch," like the patented device, applies longitudinal force on the trigger bar when activated. Specifically, a "Glock switch" has a metal "leg" that when activated contacts the trigger bar and urges the trigger bar away from its intended

4

purpose of contacting the firing mechanism. As such, the trigger bar cannot prevent forward movement of the firing mechanism following trigger activation. The result is the "Glock switch" inhibits the function of the trigger bar of the subject weapon, thus achieving fully automatic operation.

17.     Pursuant to the NFA, a "Glock switch" constitutes a machinegun, as it is "any part designed solely, exclusively, or in conjunction with other parts, that is designed and intended to convert a weapon into a machinegun." As such, "Glock switches" were subject to the NFA, FOPA, and were required to be registered in the National Firearms Registration and Transfer Record.

### COMPANY-1

18.     Company-1 was a Chinese company based in Shenzhen, Gaundong Province, China. Company-1 acquired, and advertised for sale, "Glock switches" through Website-1.

19.     Website-1 was an English-language website that featured over 150 products, predominately related to firearms, and available for sale over the internet.

20.     On Website-1's home screen, Company-1 displayed a prominent advertisement for a "Glock Auto Switch." The product was described as a "Glock Pistols Select of switch Full Auto For All models Glock all Generations" [*sic*]. Company-1 advertised the sale of "Glock switches" for $19.00.

21.     Company-1 offered potential customers two color options for the "Glock switch," bearing a likeness of the Glock Inc., logo, and with the words "Made in AUSTRIA" printed on the devices. The product description included, *inter alia*, that

5

the device fits "All models Glock all Generations," was "Easily installed and removed with no permanent modifications," and "He is suitable for the world most Glock" [*sic*]. In addition, directions on "How to install" the item included a link to a YouTube.com video which depicted how to install the device onto a Glock pistol.

**22.** Website-1 provided potential customers with customer reviews and offered customers the ability to contact Company-1 through email, Facebook, or Skype. Website-1 further allowed customers to purchase one or more "Glock switches" through PayPal.

**23.** Glock switches purchased from Company-1 through Website-1 were imported into the United States via China post and the United States Postal Service. To facilitate importation into the United States, Company-1 used false documentation and packaging labels to attempt to thwart screening by U.S. authorities.

## BINARY EXPLOSIVES

**24.** The ATF regulated, *inter alia*, the sale, storage, manufacturing, possession, and transportation of explosives.

**25.** "Tannerite" was and is the brand name of a binary explosive commonly used as a shot indicator for personal target practice.

**26.** Binary explosives were and are pre-packaged products consisting of two separate precursor components usually in the form of an oxidizer and a fuel.

**27.** The distribution and sale of precursor components, when maintained separately were not regulated by the ATF.

**28.** When binary components are combined, the resulting mixture was and is considered an explosive material subject to ATF regulation. 27 C.F.R. Part 555.

**29.** Persons having a prior conviction for crimes punishable by a term of imprisonment exceeding one year were prohibited from possessing explosive materials, including mixed binary explosives.

## THE DEFENDANT

**30.** Jacob Gragg, the defendant, was a Topeka, Kansas resident.

**31.** The defendant utilized services provided by Company-1 through Website-1 to acquire and possess "Glock switches."

**32.** On or about May 2, 2019, the defendant was found in the possession of seven (7) "Glock switches" and one-half (0.5) pound of mixed Tannerite, a binary explosive.

**33.** At no time did the defendant register himself as the owner of the "Glock switches" in the National Firearms Registration and Transfer Record.

**34.** At no time were the "Glock switches" registered on National Firearms Registration and Transfer Record.

**35.** Pursuant to FOPA, none of the "Glock switches" were lawfully possessed prior to May 19, 1986, and thus could be lawfully possessed by a private owner.

**36.** At no time was the defendant a special occupational taxpayer.

## COUNT 1
## UNLAWFUL POSSESSION OF A MACHINEGUN

**37.** Paragraphs 1 through 36 are incorporated by reference as though fully set forth.

**38.** On or about May 2, 2019, in the District of Kansas, the defendant,

### JACOB GRAGG,

knowingly and unlawfully possessed one or more machineguns, described as:

> **seven (7) modified slide plate covers compatible with Glock pistols, bearing the markings "Made in AUSTRIA" and a likeness of the Glock Inc., emblem, commonly referred to as a "Glock switch,"**

in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2), and Title 18, United States Code, Section 2.

## COUNT 2
## POSSESSION OF AN UNREGISTERED MACHINEGUN

**39.** Paragraphs 1 through 38 are incorporated by reference as though fully set forth.

**40.** On or about May 2, 2019, in the District of Kansas, the Defendant,

### JACOB GRAGG,

knowingly received and possessed one or more machineguns, described as:

> **seven (7) modified slide plate covers compatible with Glock pistols, bearing the markings "Made in AUSTRIA" and a likeness of the Glock Inc., emblem, commonly referred to as a "Glock switch,"**

not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871, and Title 18, United States Code, Section 2.

### COUNT 3
### POSSESSION OF AN EXPLOSIVE BY A PROHIBITED PERSON

**41.** Paragraphs 1 through 40 are incorporated by reference as though fully set forth.

**42.** On or about May 2, 2019, in the District of Kansas, the defendant,

**JACOB GRAGG,**

having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, namely:

> **Possession of an Opiate, Opium, Narcotic Drug or Stimulant – Methamphetamine in Shawnee County, Kansas, District Court Case Number 12-cr-1373 on or about August 23, 2012**
>
> **Burglary and Aggravated Battery; Physical Contact with a Deadly Weapon in Morris County, Kansas, District Court Case Number 13CR07 on or about August 6, 2013.**

possessed an explosive, namely:

**one-half (0.5) pounds of a mixed binary explosive, commonly known as Tannerite**,

that had been shipped and transported in interstate and foreign commerce, and did so knowingly, in violation of Title 18, United States Code, Section 842(i) and 844(a).

## COUNT 4
## POSSESSION WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE

43. Paragraphs 1 through 42 are incorporated by reference as though fully set forth.

44. On or about May 2, 2019, in the District of Kansas, the defendant,

**JACOB GRAGG,**

knowingly and intentionally possessed with the intent to distribute less than five (5) kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Section 841(a)(1) with reference to Title 21, United States Code, Section 841(b)(1)(D), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

45. The allegations contained in Counts 1-3 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 844(c)(1), 924(d), and Title 28, United States Code, Section 2461(c).

46. Upon conviction of the offense alleged in Counts 1 or 2, the defendant,

**JACOB GRAGG,**

shall forfeit to the United States of America any firearms or ammunition used in the commission of the offenses in Counts 1 or 2. The property to be forfeited includes, but is not limited to, property described as **seven (7) modified slide plate covers compatible with Glock pistols, bearing the markings "Made in AUSTRIA" and a likeness of the Glock Inc., emblem, commonly referred to as a "Glock**

**switch,"** pursuant to Title 18 United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c).

**47.** Upon conviction of the offense alleged in Count 3, the defendant,

**JACOB GRAGG,**

shall forfeit to the United States of America any explosives used in the commission of the offense alleged in Counts 3. The property to be forfeited includes, but is not limited to, property described as **one-half (0.5) pounds of a mixed binary explosive, commonly known as Tannerite**, pursuant to Title 18, United States Code, Sections 844(c)(1), and Title 28, United States Code, Section 2461(c).

**48.** If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

**A TRUE BILL.**

May 29, 2019              *s/Foreperson*
DATE                      FOREPERSON OF THE GRAND JURY

11

/s/ Skipper  Jacobs  #26848
for Stephen R. McAllister, #15845
UNITED STATES ATTORNEY
DISTRICT OF KANSAS
444 SE Quincy, Suite 290
Topeka, KS 66683
Phone: (785) 295-2850
Fax: (785) 295-2853
Stephen.mcallister@usdoj.gov

[It is requested that trial be held in Topeka, Kansas.]